## Commonwealth ex rel. Butler v. Banmiller

268

*John E. Stively, Jr.*, for Commonwealth.
*John I. Watson*, for relator

HARVEY, P. J., June 22, 1959.—After a fair and impartial trial, the jury convicted Hercules Butler of murder of the first degree and fixed the penalty by their verdict to undergo imprisonment for life. In accordance therewith sentence was imposed and he was committed to the Eastern State Penitentiary where he is presently serving that sentence. There has been filed in the office of the clerk of the courts his petition in forma pauperis for a writ of habeas corpus praying his discharge on the grounds that he is illegally restrained because he has been committed and confined without due process of law. The petition will be certified to the court of common pleas.

The petition was placed upon our argument court list and is now before us on relator's brief forming part of that petition, the district attorney's brief and the record.

The writ will be denied and the petition dismissed not only because it is sought to make the writ a substitute for an appeal, but because there is no merit whatsoever in any of the reasons assigned in support thereof.

1. The first reason upon which relator relies is predicated upon allegations of fact set forth under the subheading "CASE HISTORY" of the petition. In

substance they are that he was taken into custody on August 2, 1955, by the county detective without warrant of arrest, and that the information was not sworn or lodged against him until the date of his preliminary hearing before the justice of the peace on the sixth of that month, during which time he was not informed why he was being held in custody, and he was not permitted to communicate with anyone in his interest, and, quoting the allegations, "for a period of five (5) days, he was beaten, abused, threatened and maltreated until after five (5) days of torture and when he could no longer endure the punishment bestowed upon him, he did sign a statement admitting a crime of which he was innocent."

Relator principally contends that the admission in evidence of his written statement and "the illegal procedures bringing it into existence is clearly a denial of Due Process and Habeas Corpus is a proper remedy".

A sufficient answer to this proposition is that all the questions of fact and of law raised by these allegations were decided against relator upon his trial at no. 320, September term, 1956, Court of Oyer and Terminer of Chester County, the record of which may be relevantly considered: Commonwealth ex rel. Wagner v. Tees, 174 Pa. Superior Ct. 475. The official notes of testimony thereof show that defendant testified at length and in detail to the treatment by the police officers alleged generally in the petition, and that, in every particular, except that he was arrested without a warrant on August 2, 1956, and held in custody until the following August 6, without a preliminary hearing, the officers charged with maltreatment categorically and circumstantially denied that testimony, and that the issues of fact thus joined, including the question whether or not the incriminating statement or confession was voluntarily made without duress or coercion, were resolved by the jury against

defendant after adequate instruction by the trial judge relating to the law of extra-judicial confessions.

The writ of habeas corpus cannot be used to re-examine matters of fact passed on by a jury at a trial, such as whether a confession was the voluntary act of the signer: Commonwealth ex rel. Geiger v. Burke, 371 Pa. 230, certiorari denied 344 U. S. 859, 97 L. Ed. 666, 73 S. Ct. 98; Commonwealth ex rel. Firmstone v. Burke, 175 Pa. Superior Ct. 128, 135.

Neither the delay in giving relator a preliminary hearing nor his interrogation over a period of days was, per se, a violation of his constitutional rights: Commonwealth v. Agoston, 364 Pa. 464. The issue of the admissibility and credibility of his confession were properly submitted by the trial judge: Commonwealth v. Bryant, 367 Pa. 135.

Incidentally, the officers and others testified to a so-called reenactment of the crime by defendant and his accomplice at the scene in their presence, which evidence of incriminating admissions and demonstrations was not denied by defendant at the trial; he merely said he had no recollection of events during the period covered by the said reënactment, and is not now made the subject of objection by petitioner.

Counsel for defendant at the trial filed motions in arrest of judgment and for a new trial which the official stenographic notes show were withdrawn at the time of and before the sentence was imposed on March 24, 1958, when counsel stated to the sentencing judge in open court and in the presence of defendant that the matter had been discussed by them on numerous occasions with defendant and that "it is his desire to move the court" that the motions be withdrawn "so that he might receive his sentence". Immediately this colloquy followed:

"The Jury having convicted you of murder in the first degree and having fixed its verdict that you un-

dergo imprisonment for life and your motion for a new trial and your motion for arrest of judgment having been withdrawn by counsel in your presence, do you have anything to say why the sentence so fixed should not be imposed upon you? Do you have anything to say?

"Defendant: No sir.

"The Court: You understand that you have waived your right to have your conviction reviewed by this court and by the Appellant Courts? Do you?

"Defendant: Yes", whereupon sentence was imposed.

The record thus demonstrates that relator had a fair and impartial trial in respect of the matters about which he now belatedly complains.

2. Relator also asserts that his trial was unfair because a written statement made by his accomplice who testified against him was received in evidence. The statement was offered in evidence as exhibit D-1 by his own counsel in what appeared to them to be, and what may have been, on the question of the credibility of that witness, good trial tactics. However, the action may not be reviewed by writ of habeas corpus.

3. Relator complains that he was not represented by legal counsel until after his indictment. The record does not disclose any prejudice to him in law or in fact in this circumstance. On the contrary, the court appointed competent counsel as soon as he requested the same and again before his trial and after he had rejected those designated. Under the Act of March 22, 1907, P. L. 31, as amended 19 PS §784, the right of a destitute defendant, charged with murder, to counsel by court assignment does not accrue until the accused is under indictment: Commonwealth v. Bryant, supra. Obviously, this complaint may not be considered a writ of habeas corpus.

4. The last reason which relator asserted as a deprivation of due process may best be stated by quotation from the subheading "ARGUMENT ON QUESTION FOUR (IV)" of the petition.

"In this case during the course of the trial it was shown that your petitioner was afflicted with a highly nervous condition, which has in fact caused him to be admitted to a State Mental Hospital by his parents for treatment. Please see Notes of Testimony Pages 533-534, as to testimony relating to mental illness. Petitioner believes that this was not a matter of fact to be decided by the Jury but a matter of law to be determined by the Court by having a complete mental examination ordered by competent doctors, for otherwise the Court could not know whether or not the defendant was actually able to defend himself and to intelligently comprehend the proceedings against him."

The testimony referred to was admissible and admitted as relevant to the question of the penalty to be fixed by the jury.

Neither insanity, nor defendant's mental capacity to comprehend his position to stand trial and make a rational defense, was at issue.

So far as the mental ability is concerned the record discloses that prior to trial relator was examined by a commission appointed by the court under the provisions of The Mental Health Act of June 12, 1951, P. L. 533, 50 PS §1071, et seq., and that commission found and reported to the court that he was sane and capable of defending himself upon the trial of the indictment charging murder. The ultimate determination of that question is for the court: Commonwealth v. Novak, 395 Pa. 199, 206, citing Commonwealth v. Patskin, 375 Pa. 368, and was not of course submitted to the jury.

In conclusion, where as here the petition or application itself and the record upon which it is based fail

to make out a case entitling relator to the relief afforded by habeas corpus, a hearing is not necessary and the petition may be summarily dismissed: Commonwealth ex rel. Elliott v. Baldi, 373 Pa. 489.

And now, June 22, 1959, the said petition filed March 30, 1959, in the Court of Oyer and Terminer and Quarter Sessions of Chester County is certified to the court of common pleas of said county, and the clerk of courts of the former is directed to deliver the same, together with any relevant orders relating thereto, to the prothonotary.

The petition is dismissed and the writ of habeas corpus is denied.