## Geiger Appeal.

Argued November 27, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

52

*Martha K. Treese*, Assistant Defender, with her *Jonathan Miller*, Assistant Defender, and *Vincent J. Ziccardi*, Defender, for appellant.

*James T. Ranney*, Assistant District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, September 19, 1973:

The appellant, Alphonso Geiger, was adjudicated a delinquent on two rape charges by the Juvenile Branch of the Family Division, Court of Common Pleas of Philadelphia, on June 26, 1970. He was subsequently ordered confined in the Youth Development Center South in Philadelphia. A petition for rehearing[1] was

---

[1] Section 15 of the Juvenile Court Act, June 2, 1933, P. L. 1433, 11 P.S. §257, now repealed by The Juvenile Act, December 6, 1972, P. L. 1464, 11 P.S. §50-101 et seq., provides: "Within twenty-one (21) days after the final order of any judge of the juvenile court, committing or placing any dependent, neglected or delinquent child, such child shall, as a matter of right, by his or her parent or parents or next friend, have the right to present to the court a petition to have his or her case or cases reviewed and reheard, if, in the opinion of such parent, parents, or next friend, an error of fact or of law, or of both, has been made in such proceedings or

filed and denied, and appellant prosecuted a direct appeal to the Superior Court, where his adjudication of delinquency was affirmed in a *per curiam* order entered without opinion. *Geiger Appeal*, 221 Pa. Superior Ct. 111, 288 A. 2d 911 (1972).[2] We granted allocatur to review the question of whether a signed confession was properly admitted before the Juvenile Court. We conclude that it was not.

Two similar rapes were committed in the Philadelphia subway on April 25 and May 24, 1970. On May 28, 1970, at approximately 6:30 p.m., Geiger, then 15 years of age, was arrested for those offenses by a detective who matched his appearance to that of a composite drawing prepared from descriptions obtained from the victims. Appellant was searched (two knives were discovered), given *Miranda* warnings, and taken in custody to the Central Detective Office, where he was again given the constitutionally required warnings. Police officers testified that at 8:50 p.m. Geiger admitted his complicity, but furnished no details.

Arrangements were then made to bring the victim to a line-up, which took place at 11:00 p.m. Geiger, who had been furnished a meal meanwhile, was in the line-up but was not identified. He thereafter proved unwilling to repeat his earlier incriminating statement. Thereafter a polygraph examination was conducted, appellant was told the results were unsatisfactory, and he was further interrogated.

At 5:05 a.m. of the second day he again admitted complicity, now providing details of the crimes. A second line-up was arranged (shortly after 5:00 a.m., May 29th) and again appellant was not identified. From that time until 7:30 a.m., appellant was left in an

___

final order, or if the said order has been improvidently or inadvertently made."

[2] Judge HOFFMAN filed a dissenting opinion in which Judge SPAULDING joined.

eight-by-twelve detention room, furnished with three or four chairs and a six-foot long table, and was permitted to rest. He was then briefly interrogated, fed breakfast, and left alone until 10:40 a.m., at which time he changed into clothing obtained by police during a search (pursuant to a warrant) of appellant's home.

From 12:15 p.m. until 3:00 p.m. he was again given a polygraph examination (for comparison purposes with the failed test of the previous evening). Thereafter a detective took, with the aid of a secretary, a written statement (ten pages) from appellant, which Geiger signed at 6:00 p.m., May 29th, almost twenty-four hours after his arrest the previous evening.

A timely-filed motion to suppress the written confession was denied, after hearing, by oral order of the Juvenile Court[3] and this document was introduced at

---

[3] The Juvenile Court did not make "a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's constitutional rights", Pa. R. Crim. P. 323(i). We are aware, of course, that Rule 323 is not applicable to "juvenile proceedings." See Pa. R. Crim. P. 1(a) and the discussion in the text infra. We think however, that it is good judicial practice to indicate by way of short opinion or memorandum in what manner the juvenile court, as trier of fact in a suppression hearing, has resolved conflicting testimony. The summary of facts in the text is based on that of the Commonwealth in its brief in this Court.

In the record of the case at bar there is dispute between appellant and members of his immediate family on the one hand and the police authorities on the other as to whether appellant's close relatives were notified by the police that appellant had been taken into custody and as to whether those relatives were denied an opportunity to see or consult with the 15 year old boy. See *Commonwealth v. Harmon*, 440 Pa. 195, 269 A. 2d 744 (1970). In view of our disposition of this appeal, it is unnecessary for us to resolve this conflict. We note, however, that even under the police version of when relatives of appellant were notified, no notification was given until 9:30 a.m. on the morning of the 29th of May, some 15 hours after appellant was arrested. We must disapprove of such delay. See The Juvenile Act, December 6, 1972, P. L. 1464, §13, 11

the adjudicatory hearing, held immediately thereafter.[4]

We hold that Pennsylvania Rule of Criminal Procedure 118[5] and our decisions in *Commonwealth v. Futch*, 447 Pa. 389, 290 A. 2d 417 (1972), and *Commonwealth v. Tingle*, 451 Pa. 241, 301 A. 2d 701 (1973), require that this written confession be suppressed because obtained after "unnecessary delay" and without timely presentation of appellant before a magistrate. In *Futch* this Court announced that noncompliance by the arresting officer with the requirements of Rule 118 would require that all evidence produced or obtained during the delay would be suppressed, save that which "has no reasonable relationship to the delay whatsoever." 447 Pa. at 394. It would serve no useful purpose to repeat here the reasoning of the *Futch* and *Tingle* decisions.[6]

---

P.S. §50-310 (Supp. 1972-73) : "A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall . . . [n]otify the parent, guardian or other custodian of the child's apprehension and his whereabouts. . . ."

[4] No testimony with regard to the oral incriminating statement made at 8:50 p.m., May 28, 1970—a little more than two hours after appellant's arrest—was introduced at the adjudicatory hearing. The Commonwealth instead relied exclusively on the testimony of the victims (who were unable to identify appellant) and appellant's written and signed confession. The record is uninformative as to what occurred during the interval following appellant's arrest and the oral statement. We intend nothing in today's opinion to be taken as deciding the admissibility or inadmissibility of such oral statements.

[5] Pa. R. Crim. P. 118 provides in part: "When a defendant has been arrested without a warrant, he shall be taken *without unnecessary delay* before the proper issuing authority where a complaint shall be filed against him." When a defendant is arrested pursuant to a warrant, Pa. R. Crim. P. 116 requires that he be taken "without unnecessary delay" before the issuing authority.

[6] The author of the instant opinion concurred in the result in *Commonwealth v. Futch* and, together with the Chief Justice, joined in the concurring opinion of Mr. Justice EAGEN in *Commonwealth v. Tingle*. That concurring opinion (which continues to reflect the view of this writer) would have given any "unnecessary delay"

It is the position of the Commonwealth that Rule 118 (and hence our decisions in *Futch* and *Tingle*) do not directly control here because appellant is a juvenile and Pennsylvania Rule of Criminal Procedure 1(a) contains the following exception: "These rules shall govern criminal proceedings in all courts including courts not of record. Unless otherwise specifically provided, these rules shall not apply to *juvenile* or domestic *proceedings* nor to summary cases in Philadelphia County."[7]

What is excepted from the general application of the Rules of Criminal Procedure are "juvenile . . . proceedings." To reach the conclusion that the lengthy interrogation by police authorities of this youth is excepted from the reach of the Rules of Criminal Procedure, we must first conclude that this was a "juvenile proceeding." This we are unable to do. The act of the police in arresting a juvenile is not by itself the initiation of a "juvenile proceeding." To the contrary, we hold that the phrase in question in Rule 118 refers to proceedings conducted under the Juvenile Court Law, Act of June 2, 1933, P. L. 1433, 11 P.S. §243 et seq.[8]

---

heavy weight in determining the admissibility of a confession obtained during that delay, but would reject the exclusionary rule of *Futch*. As stated in footnote 9, infra, this case would be decided the same way under the pre-*Futch* approach of "totality of the circumstances".

[7] Appellant takes the same position, but urges that we by analogy announce a rule that juveniles, when arrested without warrant, be taken without unnecessary delay before a magistrate or other judicial officer. In view of our holding in the text, there is no need to proceed by analogy to Rule 118.

[8] The Juvenile Court Law (of 1933) discussed in the text, supra, was repealed by a new Juvenile Act, December 6, 1972, P. L. 1464, 11 P.S. §50-101 (Supp. 1973-74). That latter Act, however, was not effective until 60 days after December 6, 1972 and hence does not apply to this case.

We note, however, that the requirement of Pa. R. Crim. P. 118 that a person arrested without a warrant be taken without unnecessary delay before a magistrate is incorporated and amplified in the new Juvenile Act, §13, 11 P.S. §50-310 (Supp. 1973-74).

Under the Juvenile Court Law, proceedings may be commenced as set forth in §4, 11 P.S. §246:

"§246. *Initiation of Proceedings.*

"The powers of the court may be exercised—

"1. Upon the petition of any citizen, resident of the county, setting forth that (a) a child, giving his or her name, age, and residence, is neglected, dependent or delinquent, and is in need of care, guidance and control, (b) the names and residence of the parents, if any, or of his or her legal guardian if there be one, (c) the name and residence of the person or persons having control of the child, and (d) the name and residence of the nearest relative if no parent or guardian can be found.

"2. *Upon commitment, by a magistrate, alderman or justice of the peace,* of a child arrested for any indictable offense, other than murder, or for the violation of any other laws of this Commonwealth or the ordinance of any city, borough or township.

"3. There shall be no preliminary hearings in any cases affecting dependent, delinquent or neglected children under the age of eighteen years."

It would appear from the above quoted section that the Legislature envisioned that juveniles, like adults, would be brought before a magistrate after arrest and that the magistrate, rather than hold the juvenile for a preliminary hearing, would commit the child to the custody of the Juvenile Court, at which time "[t]he powers of [that] court [would] be exercised." We think it clear that the Criminal Rules apply until the point at which the powers of the Juvenile Court come into play under the Juvenile Court Law. That point was not reached here until after the police authorities had held appellant in custody for twenty-four hours and until after the written confession had been finally obtained. It follows that Rule 118 applies and that *Commonwealth v. Futch* requires that this confession,

obtained during a period manifestly unrelated to completion of administrative processing or unrelated to a brief exculpatory investigation, must be suppressed.[9]

The adjudication of delinquency is reversed and the matter is remanded for further proceedings consistent with this opinion.

It is so ordered.

Mr. Chief Justice JONES, Mr. Justice EAGEN and Mr. Justice MANDERINO concur in the result.

---

[9] The Commonwealth states that the issue of unnecessary delay in presentment to a magistrate was not raised below and should not be decided here. Our reading of the notes of testimony of the suppression hearing reveals that appellant's counsel indeed developed the delay point by questioning and suggested that it should invalidate the confession. The hearing was conducted *before* the decision in *Commonwealth v. Futch*, supra, and it is therefore understandable that counsel did not argue the precise principle of law there announced. We are satisfied, however, that the Commonwealth was put on notice that appellant was aggrieved by the twenty-four hours' delay and that he thought himself entitled to relief on that, and other, grounds.

In *Commonwealth v. Dutton*, 453 Pa. 547, 307 A. 2d 238 (1973), this Court held that *Futch* would be retroactively applied to January 1, 1965, the effective date of Pa. R. Crim. P. 116 (superseded by Rule 118). The author disagreed with that decision, but for reasons set forth in note 6, supra, recognizes that *Futch* must be held applicable to appellant's interrogation in May, 1970.

Under pre-*Futch* law, delay in presentation before a magistrate was but one of the factors to be considered in determining whether subsequently obtained evidence was to be suppressed. *Commonwealth v. Eiland*, 450 Pa. 566, 301 A. 2d 651 (1973) ; *Commonwealth v. Riggins*, 452 Pa. 411, 305 A. 2d 31 (1973). Were the exclusionary rule of *Futch* not applicable in the case at bar, we would reach the same result under the "totality of the circumstances" approach of the above two cases.