447 A.2d 625

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Edward SADLER.**

Superior Court of Pennsylvania.

Submitted June 13, 1980.

Filed June 18, 1982.

Petition for Allowance of Appeal Denied Oct. 13, 1982.

Steven H. Goldblatt, Deputy District Attorney, Philadelphia, for Commonwealth, appellant.

John W. Packel, Assistant Public Defender, Philadelphia, for appellee.

Before BROSKY, HOFFMAN and CIRILLO,* JJ.

PER CURIAM:

In this appeal from an order arresting judgment, the Commonwealth contends that the lower court erred in holding that appellee had not been timely tried. For the reasons that follow, we reverse the lower court and remand for disposition of appellee's remaining post-trial motions.[1]

On June 6, 1978 appellee, then fifteen years old, committed the instant robbery and an unrelated robbery. He was arrested for the present offense on July 18, 1978. The Commonwealth filed a juvenile delinquency petition, and subsequently notified appellee it would seek to certify him to stand trial as an adult in criminal court on both offenses. A hearing for both robberies was scheduled for November 14, 1978, but the complaining witness in the present case was unavailable. The juvenile court thus rescheduled the hearing on this offense, and proceeded with the hearing on the second robbery. After finding a prima facie case, the court heard testimony as to appellee's amenability to treatment as a juvenile. The court then ordered him committed to the maximum security unit at Cornwells Heights Youth Development Center (Cornwells). On December 12, 1978, it held a

---

* At the time this case was submitted, Judge Vincent A. Cirillo of the Court of Common Pleas of Montgomery County, Pennsylvania was sitting by designation.

1. Subsequent to the filing of this panel's opinions on April 3, 1981, reconsideration was granted. The prior opinions are therefore withdrawn, and this opinion issued in their stead.

certification hearing on the instant offense, found a prima facie case, but postponed the amenability determination pending a report on appellee's progress at Cornwells. On January 8, 1979 based upon the report of the director of Cornwells, the court found appellee not amenable to treatment in the juvenile system, and certified him to criminal court. His nonjury trial commenced on June 25, 1979, 341 days after the delinquency petition was filed, but 168 days after certification. Appellee was found guilty of robbery, theft, receiving stolen property, simple assault and criminal conspiracy. The next day, the trial judge contacted appellee's attorney to suggest that he allege in post-trial motions that Pa.R.Crim.P. 1100 was violated. Appellee subsequently raised that issue [2] and several others in post-trial motions. In granting appellee's motions, the trial court concluded that appellee had not been timely tried under rule 1100, and that the juvenile court had improperly certified him to criminal court. Consequently, the trial court ordered him discharged, prompting this appeal.

█ The Commonwealth argues that the lower court erred in concluding that appellee had not been timely tried under rule 1100.[3] We agree. In *Commonwealth v. Bell*, 245 Pa. Superior Ct. 164, 369 A.2d 345 (1976), aff'd mem., 481 Pa. 229, 392 A.2d 691 (1978), our Court held that when an action commenced in juvenile court by a delinquency petition is subsequently certified to criminal court, the rule 1100 period begins to run at the time of certification. *Accord*, Pa.R. Crim.P. 1100(a)(3) (effective January 1, 1982). The Court in

**2.** Specifically, appellee contended that counsel had been ineffective for failing to seek dismissal of the charges pursuant to rule 1100(f). Thus, he preserved his right to a dismissal, notwithstanding his failure to file a petition to dismiss before trial as required by the rule. *Commonwealth v. Walley*, 262 Pa. Superior Ct. 496, 501 n.6, 396 A.2d 1280, 1283 n.6 (1978).

**3.** This case is governed by Pa.R.Crim.P. 1100(a)(2), which provides: "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974, shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed." While this case was pending on appeal, rule 1100 was amended.

*Bell* based its decision upon Pa.R.Crim.P. 1(a), which states: "Unless otherwise specifically provided, these rules shall not apply to juvenile . . . proceedings." Thus, because rule 1100 does not expressly apply to juveniles, the Court reasoned that "[t]he 180 day period under Pa.R.Crim.P. 1100 commences at that point when the case comes within the powers of the Criminal Court, and hence within the ambit of the Rules of Criminal Procedure." 245 Pa. Superior Ct. at 167, 369 A.2d at 346. Consequently, in this case, the 180 day period did not begin to run until January 8, 1979, the date of certification. Because appellee's trial commenced 168 days after that date, his rule 1100 rights were not violated.

■ The lower court concluded, however, that excluding the time between the filing of the delinquency petition and certification from the rule 1100 period denies juveniles equal protection of the law. In support of its conclusion, the lower court stated:

> There is no reason not to include children within the ambit of the right to speedy trial. The Commonwealth has not suggested any possible legitimate objectives for this arbitrary and irrational distinction between adults and children. The court is unable to find any rational ground for such an invidious classification. If anything, a child needs more protection than an adult for the assertion of his Constitutional rights.

Lower Court Opinion at 11. Such reasoning incorrectly assumes that rule 1100 is constitutionally mandated. It is well settled, however, that the particular terms of rule 1100 "are neither directly granted by nor required by the Constitution." *Commonwealth v. Myrick*, 468 Pa. 155, 161, 360 A.2d 598, 600 (1976). *See also Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972) ("We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months."); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972). Therefore, the issue in this case is not whether the equal protection clause requires application of the sixth amendment right to a speedy trial to juvenile

delinquency proceedings,[4] but whether that clause prohibits our Supreme Court from adopting a speedy trial rule that does not apply to juvenile delinquency actions until they have been transferred to criminal court.

 Although we agree with the lower court that juveniles are treated differently from adults with respect to their rule 1100 rights, "not every difference in treatment amounts to a denial of equal protection; the difference must be without rational support." *Commonwealth v. Walters*, 250 Pa. Superior Ct. 446, 450, 378 A.2d 1232, 1234 (1977) citing *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) and *Commonwealth v. Staub*, 461 Pa. 486, 337 A.2d 258 (1975).[5] Because we believe that our Supreme Court could rationally adopt a rule of criminal procedure establishing a fixed period for bringing criminal defendants to trial without applying that rule to juvenile delinquency proceedings, we conclude that the equal protection clause does not mandate that the rule 1100 period begin upon the filing of the delinquency petition. As noted previously, Pa.R.Crim.P. 1(a) provides that the Pennsylvania Rules of Criminal Procedure generally do not apply to juvenile proceedings. Rule 1(a) is based upon our Supreme Court's

4. There does not appear to be any Pennsylvania decision holding that juveniles have a right to a speedy trial. Courts in other jurisdictions, however, have held that the due process clause of the fourteenth amendment requires that juveniles be afforded the right to a speedy trial. *See, e.g., P. V. v. District Court*, Col., 609 P.2d 110 (1980); *Piland v. Clark County Juvenile Court Services*, 85 Nev. 489, 457 P.2d 523 (1969). Because that issue is not before us on this appeal, we do not decide it.

5. Appellee argues that in reviewing his equal protection claim, we should apply the compelling state interest test rather than the rational relationship test because the classification interferes with a fundamental right. *See generally Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *Stottlemyer v. Stottlemyer*, 458 Pa. 503, 507, 329 A.2d 892, 894 (1974). He correctly notes that " 'the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment ....' " *Moore v. Arizona*, 414 U.S. 25, 27–28, 94 S.Ct. 188, 190, 38 L.Ed.2d 183 (1973), quoting *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). As previously noted, however, this case does not involve the constitutional right to a speedy trial but rather a right created entirely by court rule.

234

recognition of the substantial differences between juvenile and criminal proceedings. *Geiger Appeal*, 221 Pa. Superior Ct. 111, 120, 288 A.2d 911, 915 (1972) (HOFFMAN, J., dissenting), *rev'd*, 454 Pa. 51, 309 A.2d 559 (1973). *See e.g.*, Juvenile Act, 42 Pa.C.S. §§ 6336(a) (juvenile hearing conducted in informal manner by court without jury); 6336(c) (juvenile proceedings recorded only if requested by party or ordered by court); 6336(d) (general public excluded from juvenile hearings); 6352 (disposition of delinquent child). In holding that the due process clause of the fourteenth amendment requires that some rights afforded criminal defendants apply during the adjudicatory stage of juvenile delinquency proceedings, the United States Supreme Court also has recognized the differences between juvenile and criminal proceedings. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). *Cf. McKeiver v. Pennsylvania*, 403 U.S. 528, 550, 91 S.Ct. 1976, 1988, 29 L.Ed.2d 647 (1971) (plurality opinion) ("If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial."). We believe that the Federal Constitution does not preclude our legislature and Supreme Court from deciding whether procedural rules, such as rule 1100, should apply to juvenile proceedings. Accordingly, we hold that the lower court erred in concluding that rule 1100, as applied in this case, violates the equal protection clause.[6]

■ The trial court held also that the juvenile court erred in certifying appellee to criminal court because he had already been found amenable to treatment within the juvenile system for a similar crime committed the same day as

6. Because we have concluded that appellee's rule 1100 claim is without merit, his trial counsel cannot be deemed ineffective for failing to raise that claim. *See, e.g., Commonwealth v. Arthur*, 488 Pa. 262, 265, 412 A.2d 498, 500 (1980); *Commonwealth v. Walley*, *supra*, 262 Pa.Superior Ct. at 501 n.6, 396 A.2d at 1283 n.6.

the instant offense. We disagree. To certify a juvenile to criminal court in a noncapital case, the court must find, *inter alia*, that there is a prima facie case that the child has committed the offense charged, 11 P.S. § 50–325(a)(4), and that there are reasonable grounds to believe "that the child *is* not amenable to treatment, supervision or rehabilitation through available facilities," *id.* § 50–325(a)(4)(i) (emphasis added). In determining amenability, the court may consider "age, mental capacity, maturity, previous record and probation or institutional reports." *Id.; Commonwealth v. Greiner*, 479 Pa. 364, 369, 388 A.2d 698, 700 (1978). The juvenile court is thus required to determine whether the child is amenable *at the time of the hearing on that charge.* The trial court's holding that appellee's committing two crimes on the same day precluded the juvenile court from finding him amenable to one and not the other is untenable. The date of the commission of the crime is essentially irrelevant to the child's amenability. Appellee was charged with two unrelated crimes for which the Commonwealth sought certification to criminal court. Because of the unavailability of a witness in the instant case, there were two separate certification hearings. That he was found amenable to treatment at the time of the first certification hearing, did not preclude the juvenile court from later determining upon a record containing additional evidence whether he was still amenable at the time of the second hearing. In fact, the record is clear that appellee could no longer be treated as a juvenile. The school director's report indicated that appellee's behavior had begun to "decline drastically." Appellee had attacked staff members and fellow students during his brief stay and constantly intimidated weaker students. He made sexual advances toward female staff members. Moreover, he had actively participated in a riot at the school, and then organized other students to oppose the State Police officers who had arrived to quell the disturbance. The director concluded that the resources at Cornwells had been exhausted. On this ample record, the juvenile court proper-

ly found appellee not amenable to treatment in the juvenile system.

For the foregoing reasons, we reverse the order of the court below and remand for disposition of appellee's remaining post-verdict motions.[7]

So ordered.

BROSKY, J., filed a dissenting opinion.

BROSKY, Judge, dissenting:

I dissent.

Our Supreme Court has made no statement with regard to the issue of a juvenile's rights under Pennsylvania Rules of Criminal Procedure 1100 (hereinafter Rule 1100). It has, however, affirmed a decision of our court on that issue without an opinion. In the absence of any view expressed by our Supreme Court, I believe a further discussion on the subject would be appropriate.

In *Commonwealth v. Bell*, 245 Pa.Super. 164, 369 A.2d 345 (1976), *aff'd without opinion*, 481 Pa. 229, 392 A.2d 691 (1978), President Judge Cercone stated by way of a dissenting opinion that Rule 1100 was not intended to begin to run when certification occurs. Rather, as our Supreme Court's comment to Rule 1100 states:

"For the purpose of this rule only, it is intended that 'complain' also include special documents used in lieu of a complaint to initiate criminal proceedings in extraordinary circumstances." Even if it is conceded that juvenile delinquency petitions are not "special documents in lieu of a complaint to initiate criminal proceedings in extraordinary

7. The Commonwealth asks us to direct that on remand this case be assigned to a different judge because the post-verdict judge improperly assumed the role of advocate by suggesting that defense counsel raise the rule 1100 issue in post-verdict motions. At the hearing on post-verdict motions, the judge denied the Commonwealth's motion to disqualify herself. We find no basis for disturbing her decision.

circumstances," when read in context with the rule, the comment nevertheless clearly indicates that the word "complaint" was used to designate the point when criminal proceedings were initiated by the filing of the delinquency petition in Juvenile Court, not by the certification of the case to adult court.

This view was also articulated by Mr. Justice Roberts who dissented to the affirmance of *Commonwealth v. Bell*, supra., where he directs our attention to *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977), which indicated that the 180 day period will commence to run when there is an act which institutes criminal proceedings. Under the *Mitchell*, supra., analysis, that act includes the moment at which a warrantless arrest is made. It appears to me entirely inconsistent to hold that juveniles will not be accorded the same treatment under Rule 1100. Thus, I would start the Rule 1100 period when the juvenile delinquency petition is filed.[1]

Alternatively, if we hold that juveniles are not included in Rule 1100's protections pursuant to Pennsylvania Rule of Criminal Procedure 1(a), [hereinafter Rule 1(a)] we must determine whether the juvenile has been accorded due process within the scope provided adults. *In re Gault*, supra. The test by which the right to a speedy trial is gauged has been stated in *State in Interest of H.M.T.*, 159 N.J.Super. 104, 387 A.2d 368 (1978), where the court said:

As a matter of federal constitutional imperative, the test of a vitiating delay has been articulated by *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In determining whether a delay is reasonable in constitutional terms, the court is obligated to consider, balance and weigh four prescribed factors: the length of delay,

1. It is not even clear when and if a delinquency petition was filed in accordance with the procedures established in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Sadler was taken into custody on July 6, 1978 and no proceeding formally noted charges against appellee without subsequent withdrawal until December 12, 1978.

the reasons for the delay, the prejudice resulting to defendant, and defendant's assertion of the right.
Id. at 110, 387 A.2d at 371.

In the instant case, the appellee's trial commenced 341 days after the delinquency petition was filed and 168 days after certification occurred. There is no apparent legitimizing explanation for the delay which exists in the record. Appellee was the subject of several proceedings but not until December 12, 1978 was a prima facie case found to exist against him. He was held in a detention center during this period of time and thus was readily accessible to the courts. Clearly, appellee was prejudiced by the delay. He was incarcerated in a detention center. Cf: *United States v. Furey*, 500 F.2d 338 (1974). Appellee asserted his right to a speedy trial. I would hold that completely separate from Rule 1100's arbitrary 180 day limitation that appellee was denied his right to a speedy trial.

I also share the view of the court in *Furey*, supra., which stated:

As a matter of policy we see no reason why juvenile delinquency proceedings should be excluded from the plan. [Fed.R.Crim.Pro. 50(b) providing a 6 month limitation on commencement of trial] the same policies which precipitated the enactment of rules providing for prompt disposition of criminal proceedings are applicable whether the person charged is an adult or a juvenile.

I note that the application of the juvenile exception Rule 1(a) was rejected by our Supreme Court in a parallel situation in *In re Geiger*, 221 Pa.Super. 111, 288 A.2d 911 (1972), *Rev'd*, 454 Pa. 51, 309 A.2d 559 (1973).

Thus, because of the fundamental rights and compelling policy involved in this case, I can see no rational basis why the Supreme Court should require Rule 1100 be applied differently to adults than to juveniles. *Commonwealth v. Walters*, 250 Pa.Super. 446, 378 A.2d 1232 (1977). I would hold that the equal protection clause does mandate that Rule 1100's 180 day period begin to run upon the filing of a delinquency petition.